IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **WAPITI ENERGY, LLC** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | **C.A. No. _____** |
| | § | |
| **V.** | § | **Rule 9(h) Admiralty** |
| | § | |
| | § | |
| **CLEAR SPRING PROPERTY AND** | § | |
| **CASUALTY COMPANY,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Wapiti Energy, LLC ("Wapiti" or "Plaintiff") and files this Original Complaint against Defendant Clear Spring Property and Casualty Company ("Clear Spring" or "Defendant"), and would respectfully show the Court the following:

### I.
### PARTIES

1.      Plaintiff Wapiti Energy, LLC is a domestic limited liability company formed under the laws of the State of Texas with its principal place of business in Harris County, Texas.

2.      On information and belief, Defendant Clear Spring Property and Casualty Company is a foreign corporation organized under the laws of the State of Illinois with its principal place of business in Cook County, Illinois.

### II.
### JURISDICTION

3.      This is a case of federal admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

1

4.      Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332 as diversity exists between the parties and the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k) and Texas Civil Practice and Remedies Code § 17.042(1) because Defendant is a nonresident doing business in Texas. Defendant contracted with Plaintiff, a Texas resident, and the contract was to be performed in Texas. This Court further has personal jurisdiction over Defendant pursuant to Texas Civil Practice and Remedies Code § 17.042(2) as Defendant has committed torts in Texas.

6.      Venue is proper and maintainable in the Southern District of Texas – Houston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### III.
### FACTUAL BACKGROUND

7.      Wapiti is an oil and gas exploration and production company based in Texas. As part of its oil exploration and production activities, Wapiti owns and utilizes oil storage barges in inshore waterways along the Louisiana coast.

8.      Clear Spring is an insurance company that sells marine insurance.

9.      For the twelve-month period beginning July 1, 2021, Clear Spring issued Marine Insurance Package Policy CSWAEN2021070039 (the "Policy") to Wapiti. The Policy package included a hull policy ("Hull") and protection and indemnity policy ("P&I") and included an initial schedule of four vessels: one tugboat and three tank barges.

10.      Agreed hull values on each of the three barges were $350,000, subject to a $15,000 deductible.

11.      The P&I limit for each barge was $1,000,000, subject to a $10,000 deductible.

2

12.     On August 26, 2021, a storm system developing near Grand Cayman island in the Caribbean Sea was upgraded and named Tropical Storm Ida. As Ida intensified from a tropical storm to a hurricane, the forecast placed Southeast Louisiana squarely in the storm's path.

13.     While Ida made its way toward the Louisiana coast, Wapiti began to monitor its assets in the area. One such asset was the vessel SMI 315, crude oil storage barge that was moored near Batiste Bay, an inshore area roughly 20 miles east of Port Fourchon, Louisiana.

14.     On August 29, 2021, Ida made landfall at Port Fourchon, bringing with it sustained winds of 150 miles per hour and causing catastrophic damage across Louisiana and other Southern states. Ida would eventually be considered the second most damaging hurricane in Louisiana history, only behind Hurricane Katrina.

15.     As a result of the hurricane, Wapiti's crude oil barge SMI 315 slipped its moorings and was set adrift, eventually washing aground on marshland near Batiste Bay. At the time of the grounding, SMI 315 was heavily laden with crude oil.  Fortunately, the initial evaluation indicated that SMI 315's hull remained intact, no pollutants had been released, and no pollution threat was imminent.

16.     After Ida finished its barrage on Louisiana, Wapiti was made aware that ConocoPhillips owned the land on which SMI 315 washed aground. Knowing that it was legally obligated to remove its wreck from ConocoPhillips' private property, Wapiti promptly began obtaining bids for SMI 315's removal.

17.     Having received a salvage bid estimate of $880,000, Wapiti made a timely claim to Clear Spring under the Policy.

18.     On or around October 18, 2021, Clear Spring's claim representative informed Wapiti that it would not pay the salvage amount of $880,000. The claim representative instead

3

offered a payment of just $265,000, or roughly 30% of the estimated cost to recover the wrecked barge.

19.     Adding insult to injury, the $265,000 settlement offer was wholly conditioned on Wapiti's full and final release of all claims against the Policy and all legal claims against the assurer, despite the fact that a settlement of a claim under the Hull policy did not serve as an admission of Clear Spring's liability regarding the P&I policy or otherwise prejudice Clear Spring in any way.

20.     In the October 18, 2021 letter, Clear Spring informed Wapiti that it considered the vessel a constructive total loss under the Hull policy and that it arrived at $265,000 by deducting SMI 315's fair market value of $85,000 from its declared value of $350,000. The deduction for fair market value was for Wapiti's retention of SMI 315.[1]

21.     Despite Clear Spring's bad faith offer of settlement, the salvage had to continue.

22.     The scope of work required to remove SMI 315 was extensive. Because SMI 315 was aground in an environmentally sensitive area and laden with crude oil, a pre-salvage sonar scan was undertaken to verify the condition of the vessel and its contents.

23.     The scan determined that the hull was able to be removed safely and lightering operations began in an attempt to refloat SMI 315. After lightering operations were completed, SMI 315 was safely towed off site without incident.

24.     After the successful refloat and removal, an additional sonar scan was performed to verify the condition of the barge.

---

[1] Pursuant to the terms of the Policy, the deductible requirement is inapplicable when a total loss has been declared.

25.     Though there was minimal damage to SMI 315, an evaluation of the impacts caused by the grounding revealed that there was damage to the marshland owned by ConocoPhillips and to a nearby commercially leased oyster bed.

26.     The total amount expended by Wapiti in the recovery and removal of the wrecked SMI 315 was $926,840. The largest two expenses were for lightering and recovery, which cost Wapiti $513,000 and $375,000, respectively. All expenses incurred and advanced by Wapiti are Clear Spring's obligation under the Policy.

27.     In an effort to drive a mutually agreeable conclusion of the claim, Wapiti's insurance broker, Alliant Insurance Services, attempted to facilitate a claim settlement. On or around December 20, 2021, Alliant submitted a reimbursement request to Clear Spring for $615,000. Making up the $615,000 was $350,000 under Hull coverage, reduced $85,000 for Wapiti's retention of the vessel, and $350,000 in vessel recovery expenses, supported by the Policy's sue and labor clause and reduced in a good faith effort to push a resolution.

28.     Unfortunately, Clear Spring responded by simply reasserting its position that the only coverage applicable to the wreck was the Hull coverage. Clear Spring refused to engage in any additional substantive good-faith settlement or resolution discussions of any kind.

29.     Notably, despite repeatedly conceding that coverage under the Hull policy is indisputably required, Clear Spring has declined to make payment on that portion of the Policy without the blanket legal release. While the proper protocol is to pay the undisputed portion and continue discussions regarding the disputed coverage provisions, Clear Spring has and continues to withhold **all** payment.

30.     In its correspondence, Clear Spring takes the position that no consideration under the P&I policy is merited because there is no reported damage to SMI 315. Troublingly, such

assertion is made entirely without an explanation as to the factual or legal basis for same. In fact, as indicated by a total lack of asserted factual support for its settlement position, Clear Spring has likely failed to adequately investigate Wapiti's presented claim.

31.     Despite Clear Spring's assertions to the contrary, the terms of the P&I policy are clearly applicable to Wapiti's claim. For example, the P&I policy provides for reimbursements of "cost or expense of, or incidental to, the removal of the wreck of a vessel named herein when such removal is compulsory by law, . . . ."[2] Further, the Hull policy contains a typical sue and labor clause, which is also applicable to Wapiti's claim.[3]

32.     On or around March 4, 2022, Wapiti sent a letter to Clear Spring's claim representative demanding full payment of the $926,840 and resolution of Wapiti's claim, which has now been pending more than six months. Despite making repeated requests for a response to the March 4 letter, Clear Spring has declined to resolve the claim or even provide its formal position.

33.     Given the amount of time Wapiti's claim has gone unresolved by Clear Spring, the facial validity of Wapiti's claims under the Policy language, and Clear Spring's continued non-responsiveness to Wapiti's settlement efforts, it is evident that Clear Spring's conduct has at all times been undertaken knowingly.

---

[2] Exh. A at 12 ¶ 7.
[3] *Id*. at 7.

## IV.
## CAUSES OF ACTION

### A. Breach of Contract

34.     Wapiti incorporates the above paragraphs as if set forth herein in their entirety.

35.     Wapiti and Clear Spring entered into a valid, enforceable marine insurance contract.

36.     Wapiti fully performed its obligations under the contract.

37.     Clear Spring has failed to perform its obligations under the contract by failing to properly approve Wapiti's claim on the Policy for SMI 315.

38.     Clear Spring's breach of contract and continued bad-faith refusal to abide by the terms of the Policy has caused and continues to cause damages to Wapiti. The total amount presently due to Wapiti under the Policy is $926,840.

### B. Breach of Texas Insurance Code Chapter 541

39.     Wapiti incorporates the above paragraphs as if set forth herein in their entirety.

40.     Given the terms of the Policy and the facts underlying the claim, Clear Spring's liability has become at least reasonably clear.

41.     Clear Spring has knowingly failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement regarding Wapiti's claim.

42.     Further, Clear Spring has knowingly failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Wapiti's claim under the Hull policy—which Clear Spring itself concedes applies to Wapiti's claim—in order to influence Wapiti's settlement of its legitimate claim under the P&I policy.

43.     Clear Spring has knowingly failed to provide Wapiti with a reasonable explanation of the basis in the Policy, in relation to applicable facts and law, for its denial of Wapiti's claim or its offer of compromise settlement.

7

44.     Clear Spring has knowingly failed to affirm or deny coverage on Wapiti's claim within a reasonable time.

45.     Clear Spring has knowingly refused to pay Wapiti's claim without conducting a reasonable investigation into the claim.

46.     Wapiti has sustained damages as a result of Clear Spring's violation of the Texas Insurance Code.

## C.  Breach of Good Faith and Fair Dealing

47.     Wapiti incorporates the above paragraphs as if set forth herein in their entirety.

48.     Clear Spring has a duty under Texas common law to deal fairly and in good faith with Wapiti, its' insured, in processing claims.

49.     Clear Spring breach that duty by failing to approve Wapiti's claim even though Clear Spring knows or should know that it is reasonably clear that Wapiti's claim is covered under the Policy.

50.     Clear Spring's breach of its duty to Wapiti has proximately caused Wapiti damages.

## D.  Attorneys' Fees

51.     Wapiti incorporates the above paragraphs as if set forth herein in their entirety.

52.     Because of Clear Spring's unlawful conduct, Wapiti was forced to retain legal counsel to assert its rights. Wapiti has incurred reasonable and necessary legal expenses in the attempted settlement of its claim on the Policy and in this judicial action to enforce its rights under the Policy.

53.     Wapiti is entitled to recovery of its reasonable and necessary costs, expenses, and attorneys' fees, pursuant to, at a minimum, Texas Civil Practice and Remedies Code § 38.001 and Texas Insurance Code § 541.152.

## V.
## CONDITIONS PRECEDENT

54.     All conditions precedent have been performed or have occurred.

## VI.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff Wapiti Energy, LLC requests that

Defendant Clear Spring Property and Casualty Company be cited to appear and answer and that,

upon trial of all causes of action asserted by Plaintiff, judgment be entered against Defendant

awarding Plaintiff:

i.      all actual damages incurred;

ii.     treble damages as provided for by statute for Defendant's knowing unlawful
        conduct;

iii.    pre- and post-judgment interest in the maximum amount allowable by law;

iv.     costs, expenses, and reasonable and necessary attorneys' fees; and

v.      such other and further relief, both at law and in equity, to which Plaintiff is justly
        entitled.



Respectfully submitted,


**KEAN MILLER LLP**


By:     _/s/ Timothy W. Strickland_
        Timothy W. Strickland
        State Bar No. 19396298
        Stacey T. Norstrud
        State Bar No. 24025363
        711 Louisiana Street, Ste. 1800 South Tower
        Houston, Texas 77002
        Telephone: 713-844-3031
        Facsimile:  713-844-3030

Tim.strickland@keanmiller.com
Stacey.norstrud@keanmiller.com

***ATTORNEYS FOR PLAINTIFF
WAPITI ENERGY, LLC***