Case 4:22-cv-01192   Document 23   Filed on 02/28/23 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
February 28, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **WAPITI ENERGY, LLC,** § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-01192 |
| § | |
| **CLEAR SPRING PROPERTY AND** § | |
| **CASUALTY COMPANY,** § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Currently pending before this Court are parties' Motions for Summary Judgment (Docs. 15, 16.) The parties dispute whether Defendant, an insurer, was required to pay for the recovery of Plaintiff's oil barge after Hurricane Ida set the ship adrift and grounded it in a marsh owned by a third party. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED**.

**I. BACKGROUND**

    **A. Factual Background**

The parties do not dispute the basic facts of this case. Plaintiff Wapiti Energy, LLC is a Texas oil and gas exploration and production company. (Doc. 13 at 1-2.) It owns oil storage barges in waterways in Louisiana. *Id.* at 2. In July 2021, Defendant Clear Spring Property and Casualty Company issued Plaintiff a twelve-month insurance package. The package included two different policies: a hull coverage policy and a protection and indemnity ("P&I") policy. The hull policy covered losses to scheduled vessels resulting from enumerated perils, including perils of the sea. (Doc. 15-3 at 3, 6.) It covered agreed hull values of $350,000 for each of the three covered barges,

subject to a $15,000 deductible. (Doc. 13 at 2.) The P&I policy provided indemnity for enumerated liability claims, including wreck removal. (Doc. 15-3 at 11-13.) The P&I limit for each barge was $1,000,000, subject to a $10,000 deductible. (Doc. 13 at 3.)

In August 2021, Hurricane Ida made landfall in Louisiana. As a result of the hurricane, Wapiti's crude oil barge SMI 315 slipped its moorings and was set adrift, eventually washing aground on marshland owned by ConocoPhillips. (Doc. 13 at 3.) An evaluation indicated that the barge's hull remained intact, no oil had leaked, and there no immediate threat of leakage from the grounded barge. *Id.* at 3. Plaintiff received bids for removing the barge from the property for $880,000. *Id.* It submitted a claim for these costs to Defendant under its P&I policy, which covers compulsory wreck removal: "Liability for cost or expenses of, or incidental to, the removal of the wreck of the vessel named herein when such removal is compulsory by law." (Doc. 16-1 at 13.) However, Defendant denied the claim and offered only a payment of $265,000 under the hull policy for the remaining value of the barge. It informed Plaintiff that it considered the vessel a constructive loss due to the significant disparity between the salvage costs and the value of the hull. (Docs. 13 at 4; 15-3 at 6-8.)

Plaintiff safely removed the oil the barge was carrying and refloated and towed the barge without incident. (Doc. 13 at 4.) The total amount expended in the recovery and removal of the barge was $926,840.32. *Id.* at 5. The parties have resolved Wapiti's portion of the claim under the hull clause. However, the claim on the P&I policy remains in dispute and is the subject of this pending action.

### B. Procedural History

Plaintiff filed the present case in April 2022 under federal admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and, alternatively, under diversity jurisdiction pursuant

to 28 U.S.C. § 1332. (Doc. 13.) Plaintiff asserts Defendant is liable for breach of contract, breach of Texas Insurance Code Chapter 541, and breach of good faith and fair dealing. Plaintiff also seeks attorney fees. The parties now bring opposing Motions for Summary Judgment.

## I. STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## II. ANALYSIS

Plaintiff argues Defendant was required to cover the costs of the barge's removal based on two provisions—the wreck removal clause in the P&I policy and, in the alternative, a sue and labor clause in the hull policy.

### A. Wreck Removal Clause

The P&I policy covers "[l]iability for costs or expense of, or incidental to, the removal of the wreck of the vessel . . . when such a removal is compulsory by law." (Doc. 16-1 at 13.) The parties debate whether the barge's condition qualified it as a "wreck" and, if so, whether removal was "compelled by law." Regardless of whether the barge should be considered a wreck under the provision, the Court must conclude that the law did not compel the barge's removal.

The Fifth Circuit construes "compelled by law" in its "plain, ordinary, and popular sense." *Cont'l Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1369 (5th Cir. 1983) (en banc). In practice, the circuit interprets the term to encompass liability to third parties and statutory edicts. *See id.* ("Restricting 'compulsion' to the mandate of a governmental agency rather than according it the usual significance of the generalized command of a statute or judicial decision narrows the meaning of the term considerably and, we think, unjustifiably."); *Progress Marine, Inc. v. Foremost Insurance Co.*, 642 F.2d 816 (5th Cir. 1981) ("Viewing these three words together as a phrase, it seems evident that 'compulsory by law' in the context of their insurance policy should not be viewed as restricted to situations in which an express direct order from a governmental body directs removal.").

The Fifth Circuit has ultimately adopted the following test for legal obligations for removal:

> The test we have adopted . . . makes removal compulsory *when a reasonable owner, fully informed*, would conclude that failure to remove would likely expose him to

> liability imposed by law *sufficiently great in amount and probability of occurrence* to justify the expense of removal. The compulsion of law is not restricted to a categorical duty, attended by criminal sanctions. It extends to a legal duty *imposed either by statute or general maritime law*, including those duties for whose non-performance the sanction is payment of damages to persons injured. Even thus interpreted, the policy nonetheless extends only to a duty to remove "imposed by law." *Such a duty must be present and unconditional, not remote and contingent.*

*Cont'l Oil Co.*, 706 F.2d at 1372-73 (emphasis added) (internal citation omitted).

Plaintiff provides two reasons why it believes it had an obligation to remove the vessel from third-party land under this test.

### 1. Liability to third parties

First, Plaintiff argues it owed an obligation to ConocoPhillips, the landowner, to remove the vessel—particularly given the barge was carrying crude oil. But Plaintiff does not identify persuasive or binding jurisprudence establishing that non-negligent owners are legally liable for the costs of removing wrecked vessels on third-party land. Generally, "[a] non-negligent owner is not personally liable for the cost of removing a sunken vessel, even if the vessel constitutes a hazard to navigation." *Cont'l Oil*, 706 F.2d at 1372. In *Continental Oil*, for example, the Fifth Circuit found no legal obligation for a charterer to remove a vessel from under a leased platform. The Court rejected the petitioner's argument that either (1) federal regulations required removing the equipment from its lease within one year after the lease had terminated or (2) it may have been liable for damage to the land, as remote and unclear. *See id.* at 1372 (rejecting district court considerations of prudence and convenience).

Defendant argues that the barge at issue was resting on a marsh and posed no threat. (Doc. 18 at 8.) ConocoPhillips made no formal claim, and the barge did not interfere with the landowner's operations. *Id.* at 9. Therefore, Defendant argues, the duty was not clear, established, or severe. Defendant further contends that the Fifth Circuit imposes a proportionality test when it requires that a legal obligation not only exist but be "sufficiently great in amount . . . to justify the

expense of removal." *Cont'l Oil Co.*, 706 F.2d at 1372. Defendant alleges the estimated cost of restoring the marshland was only about $25,000 compared with the approximately $900,000 costs of removal. (Docs. 15-3 at 15; 15-6 at 2.)

Plaintiff's strongest authority is a Louisiana intermediate appellate case finding that the owner of a stranded barge was responsible for its removal in a possessory action. (Doc. 16 at 10-11 (citing *Terre Aux Beofs Land Co., Inc. v. J.R. Gray Barge Co., et al.*, 803 So.2d 86 (La. Ct. App. 2001).) In that case, a Louisiana court granted an injunction ordering the barge's owner to remove the barge from the property but found the landowner had no cause of action for further damages that might result from the removal of the barge. It is not apparent to this Court that other courts, in Louisiana or elsewhere, have relied on or replicated *Terre Aux Beofs*'s theory of liability.

Plaintiff argues that ConocoPhillips requested the removal of the barge. (Doc. 17 at 14.) But it points to no statements made by the landowner that would indicate ConocoPhillips's intent to impose liability for failure to remove the barge. *Compare with Starr Indem. & Liab. Co. v. Cont'l Cement Co.*, No. 4:11CV809 JAR, 2013 WL 1442456, at *11 (E.D. Mo. Apr. 9, 2013) (finding Marine Corp's letters warning it would take legal action was sufficient to establish likely exposure to liability). Plaintiff further argues that the sensitive nature of the marshland and potential hazards posed by the oil make the risk of liability severe. (Doc. 13 at 3-4.) The Court does not foreclose the possibility that environmental risks may impose obligations on owners of wrecked ships. But Plaintiff does not provide the Court with evidence demonstrating significant and probable liability. In fact, Plaintiff's amended complaint explicitly states, "there was no immediate pollution threat from the grounded barge." *Id.* at 3. Absent any robust analysis that such damages were likely to occur and sources of authority that a ship owner would be held accountable

for such damages, the Court cannot conclude that Plaintiff faced more than a remote or abstract legal duty.

### 2. Liability under the Wreck Act

Second, Plaintiff argues that removing the barge under the Wreck Act was statutorily required. The Act establishes that "whenever a vessel . . . is wrecked and sunk in a *navigable channel*, . . . it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently." 33 U.S.C. § 409 (emphasis added); *see, e.g.*, *Danos Marine Inc. v. Certain Primary Prot. & Indem. Underwriters*, 613 F.3d 479, 484 (5th Cir. 2010) (finding a "reasonable, fully informed owner . . . would conclude that failure to remove [the wreck] would likely expose him to liability pursuant to the Wreck Act" and, therefore, P&I policy covered wreck recovery). "The purpose of [§ 409] is the protection of other vessels plying the same waters." *Raven*, 500 F.2d at 732.

In the present case, the barge was grounded in marshland on the side of a broader channel. Plaintiff alleges the barge was "partially within the navigable waterway," providing photos for the proposition. (Docs. 16-2 at 3-4; 17 at 6.) Plaintiff does not allege that ships use the waterway for navigation. Defendant emphasizes the barge's presence in marshland rather than in the channel and states the area is rarely used.

The evidence suggests the barge was mainly in the marshland rather than the waterway and was not blocking traffic. Therefore, the Wreck Act does not apply.

### B.  Sue and Labor Clause

In the alternative, Plaintiff argues that a sue and labor clause requires reimbursement. (Doc. 16 at 17.) In the event of potential hull loss, the insured may be obligated to undertake efforts to prevent future loss or damage:

> And in case of any loss or misfortune, it shall be lawful and necessary for the assured, their factors, servants and assigns, to sue, labor and travel for, in, and about the defense, safeguard and recovery of the vessel, or any part thereof, without prejudice to the insurance, to the charges whereof the underwriters will contribute their proportion as provided below.

(Doc. 16-1 at 8.) The "sue and labor" clause "undertakes to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter, either to reduce or eliminate a covered loss altogether." *Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 488 (5th Cir. 1960). While Plaintiff argues that the purpose of the clause is to prevent the loss of the subject of the policy, the language of the policy and intent behind it indicate the clause protects actions taken to mitigate the insurer's losses. Plaintiff does not provide evidence to demonstrate its efforts were designed to minimize Defendant's losses, particularly considering Defendant's declaration of constructive loss.

### III. CONCLUSION

Having found no contractual breach, the Court does not need to reach the issues of statutory penalties or bad faith. The Court must **GRANT** Defendant's Motion for Summary Judgment and **DENY** Plaintiff's Motion.

**IT IS SO ORDERED**.

Signed at Houston, Texas on February 28, 2023.

_____
Keith P. Ellison
United States District Judge